**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

_____

| | | |
|---|---|---|
| **LOLITA PENNINGTON, INDIVIDUALLY** | **)** | |
| **AND AS REPRESENTATIVE OF THE** | **)** | |
| **ESTATE AND WRONGFUL DEATH** | **)** | |
| **BENEFICIARIES OF ANDRIANA HALL,** | **)** | **Civil Action No.:3:16cv248-NBB-JMV** |
| | **)** | |
| _**Plaintiffs,**_ | **)** | |
| | **)** | **JURY DEMANDED** |
| **vs.** | **)** | |
| | **)** | |
| **SHARANJIT PARMAR,** | **)** | |
| **PARMAR TRUCKLINES,** | **)** | |
| **UPS GROUND FREIGHT INC.** | **)** | |
| **a/k/a UNITED PARCEL SERVICE,** | **)** | |
| | **)** | |
| _**Defendants.**_ | **)** | |

_____

**MEMORANUM OF LAW IN SUPPORT OF DEFENDANT UPS GROUND FREIGHT, INC.'S
MOTION TO COMPEL DISCOVERY AND REQUEST FOR EXPEDITED HEARING**
_____

Defendant UPS Ground Freight, Inc. ("UPS"), by and through its counsel of record, Glassman, Wyatt, Tuttle & Cox, P.C., and respectfully files this Memorandum of Law in Support of its Motion to Compel Discovery and Request for Expedited Hearing pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, and in support thereof, would show as follows:

## FACTUAL BACKGROUND

This case arises from a multi-vehicle accident that occurred on or about April 14, 2016. On that date, Andriana Hall ("Hall") was speeding westbound on US 78 with no headlights illuminated in heavy rain near Olive Branch, Mississippi, when she lost control of her white 2003 Chevrolet Impala, began to spin, struck the median cable barrier, and eventually came to a sideways stop blocking the travel lanes of the roadway. At some point after Hall lost control of

her vehicle, she struck at least one other vehicle, a tractor trailer driven by Defendant Sharanjit Parmar for Defendant Parmar Trucklines (collectively, the "Parmar Defendants"), and then another tractor-trailer driven by James Capwell for Defendant UPS. Hall was pronounced dead at the scene. Hall's vehicle was later towed by Lazer Towing to its facility in Olive Branch, Mississippi, where the vehicle has remained since that time.

Later, on October 28, 2016, Plaintiff filed suit in this matter, alleging, *inter alia,* claims of negligence, gross negligence, vicarious liability/*respondeat superior*, and negligent hiring/training/entrustment/supervision/retention against UPS. UPS timely filed its answer denying each of Plaintiff's claims, and on April 19, 2017, UPS served on the Plaintiff and her counsel of record its First Sets of Interrogatories and Requests for Production of Documents, both to Plaintiff Lolita Pennington individually, and to the Plaintiff as Representative of the Estate and Wrongful Death Beneficiaries of Andriana Hall.

Plaintiff provided her "responses" to each of these four (4) sets of discovery requests on or about May 19, 2017. However, these discovery responses contained numerous deficiencies, admissions of spoliation of evidence, and generic, boilerplate objections and refusals to answer. (*See* Ex. 1, Plaintiff's responses to Defendant UPS's First Set of Interrogatories to the Plaintiff, Lolita Pennington, Individually; Ex. 2, Plaintiff's responses to Defendant UPS's First Set of Requests for Production of Documents to the Plaintiff, Lolita Pennington, Individually; Ex. 3, Plaintiff's responses to Defendant UPS's First Set of Interrogatories to the Plaintiff as Representative of the Estate and Wrongful Death Beneficiaries of Andriana Hall; Ex. 4, Plaintiff's responses to Defendant UPS's First Set of Requests for Production of Documents to the Plaintiff as Representative of the Estate and Wrongful Death Beneficiaries of Andriana Hall.)

2

Although UPS repeatedly attempted to resolve these deficiencies with the Plaintiff in good faith, to date, Plaintiff has refused to provide any supplementation or revision of her responses. Most recently, Plaintiff's expert disclosure deadline passed on November 20, 2017. Once again, Plaintiff failed to timely and properly supplement her discovery responses and production in this case, and is even going so far as to flatly refuse to produce her proposed "experts" or their materials until *after* the Defendant's expert disclosure deadline of December 19, 2017. In light of the gross deficiencies contained within her responses and willful attempts to undermine Defendant's right to discovery in advance of a rapidly approaching expert deadline, Defendant has no alternative but to seek the Court's intervention.

## DISCOVERY AT ISSUE

For the sake of brevity, Defendant will not reproduce within this Memorandum the verbatim text and Plaintiff's response (or lack thereof) to each request at issue. Rather, each of the four (4) sets of discovery have been attached to the instant Motion as an individual exhibit, and each discovery request at issue has been identified below, along with a detailed statement of precisely why UPS contends that Plaintiff's response is deficient. In addition, there are several "overlapping" deficiencies contained within each set of responses and which, rather than repeat for each set of discovery requests, have been highlighted for the Court's convenience below.

**I.      Plaintiff's use of general, boilerplate objections in her "Prefatory Statements"**

At the beginning of each set of her discovery responses, Plaintiff included a "prefatory statement," written and signed by her counsel in this matter. In the statement, Plaintiff limited her "responses" to UPS's discovery requests to "only [ ] such information and documents as are presently available to and specifically known to them." The included "prefatory statement" further goes on to indicate specifically that Plaintiff specifically "anticipated" "that further

discovery, independent investigation and legal research and analysis will supply additional facts and/or documents" and that as a result thereof, Plaintiff "will establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions herein set forth."

The implication of Plaintiff's prefatory statement, that she may permissibly avoid her discovery obligations based upon her "anticipation" that unspecified "additional facts and/or documents" will some day in the future allow her to "establish entirely new factual conclusions and legal contentions," runs directly contrary to both the spirit and letter of the Rules. Indeed, the Rules specifically provide that regardless of the early or late stage of the discovery process, and regardless of what "further discovery, independent investigation and legal research and analysis" a party anticipates completing later, the party still "must make its initial disclosures **based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."** Fed. R. Civ. P. 26(a)(1)(E) (emphasis added). Likewise, Rule 26(g)(1) of the Federal Rules of Civil Procedure requires that a party's *attorney* actually certify and swear that he/she has undertaken "a reasonable inquiry" *prior to* signing off on a party's responses to discovery and that such responses/disclosures are "complete and correct" at the time they are made. Fed. R. Civ. P. 26(g)(1)-(1)(a). If a party or her attorney "violates this rule without **substantial justification,** the court, on motion or on its own, **must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both**...." Fed. R. Civ. P. 26(g)(3) (emphasis added).

Defendant respectfully submits that Plaintiff's "prefatory statement" is improper and an impermissible attempt to bypass Plaintiff's discovery obligations under the Rules, and that it should be stricken in its entirety and Plaintiff ordered to immediately supplement her discovery responses accordingly.

## II.     Plaintiff's Unsupported Claims of Privilege and Failure to Provide a Privilege Log

Plaintiff frequently inserted objections on the basis of claims of privilege in order to avoid fully and fairly responding to Defendant's discovery requests. Plaintiff made claims of attorney-client privilege, work-product privilege, consulting expert privilege, and made claims that documents and information were protected because they were "prepared in anticipation of litigation or for trial." Despite these claims, Plaintiff never produced any privilege log as required by Rule 26. *See* Fed. R. Civ. P. 26(b)(5). Even now that Plaintiff's expert disclosure deadline has passed, Plaintiff still has not supplemented her discovery responses or production in this case, and to date, still has not produced any privilege log to support her assertions of privilege. Plaintiff's improper and unsupported claims of privilege should therefore be stricken in their entirety, and Plaintiff should be ordered to immediately provide the requested documents and information.

## III.    Ex. 1 – Plaintiff's Individual Responses to UPS's First Set of Interrogatories

The following deficiencies are noted in Plaintiff's individual responses to Defendant's First Set of Interrogatories in this matter, and Defendant respectfully submits that Plaintiff should be required to immediately provide full, complete, and verified responses to each of the Interrogatories set forth below.

Interrogatory No. 2: Plaintiff's response to this request, which simply asks that Plaintiff "identify and describe with reasonable particularity" the substance of statements made *to her or*

5

*persons purporting to act on her behalf*, by another party to this litigation or any person purporting to be an agent or representative of such party, about the claims or defenses raised in this specific case, was to object that the information sought was privileged, "premature" and "constitute[d] an attempt to invade counsel's work product including counsel's legal and evidentiary analysis." Plaintiff therefore declined to provide any substantive response whatsoever.

Interrogatory No. 4: This request simply asks the Plaintiff, in her individual capacity, to "[i]temize and describe" each element of damages she intends to claim against UPS in this case, and in so doing, to identify each person or document which she contends supports her claims. Plaintiff's "answer" contained nothing but a series of objections, such as that the interrogatory was "premature," "call[ed] for a narrative response," "require[d] Plaintiff to testify as to matters wherein Plaintiff does not have personal knowledge [and/or] to offer testimony which falls under the purview of expert testimony," and that it otherwise "invade[d] the province of the jury." Plaintiff then stated that she "would defer Defendant to the latest Complaint on file which details the damages being sought .... to any deposition testimony that Plaintiff, [unidentified] loved ones, expert witness(es) and/or friends or acquaintances have given/may possibly give in the future." No substantive response was provided at all.

Interrogatory No. 5: When asked to describe the factual basis for her individual claims of "past, present and future mental anguish and emotional distress," "past present and future loss of the care, maintenance, support, advice, counsel, companionship and society of Andriana Hall and the loss of consortium" in this case, Plaintiff again used the same boilerplate objections set forth in her response to the preceding interrogatory and generic references to potential future depositions of unidentified persons. The only "substantive" portion of her response was a vague

and nonsensical reference to the assertion that Plaintiff "can't drive or ride in the rain," with no explanation whatsoever for how such a statement correlates (if at all) to any of the claims at issue in this case.

Interrogatory No. 6: This interrogatory asked very simply whether the Plaintiff, individually, claimed any actual physical, mental, or emotional impairment" or other such form of loss as a result of the accident and, if so, to identify any person or document which supports her purported claim. Plaintiff's "response" was to list the same boilerplate objections as those referenced in Interrogatory No. 4.

Interrogatory No. 12: This request sought the actual dollar amounts and particular nature of the care/support Plaintiff contends the decedent contributed to the Plaintiff's support during the five (5) years prior to the accident. Plaintiff objected on the "grounds" that the request "call[ed] for a narrative response," sought "to narrow Plaintiff's responses without the benefit of specific questions during direct or cross examination," and impermissibly attempted "to use interrogatories to 'fish' for information or require the responding party to provide a statement of all its proof." No substantive response was provided.

Interrogatory No. 13: In light of Plaintiff's claims concerning loss of support, an alleged loss of earning capacity and loss of the pecuniary value of the life of Andriana Hall, this request asked whether the Plaintiff or the Decedent ever received any type of disability compensation or assistance/subsidy, and if so, to provide the inclusive dates of each, the circumstances surrounding the compensation/assistance, and the alleged disability/injury or other circumstance giving rise to the compensation. Plaintiff provided at best limited information concerning her receipt of "SSI" and "SSA," and stated that the Decedent had received food stamps "from time to time," but failed to provide the remainder of the information sought.

Interrogatories 14, 15 and 16:  Each of these three interrogatory requests ask the Plaintiff to provide the factual basis for her various claims against UPS and its driver, James Capwell as it relates to the subject accident. For each request, Plaintiff inserted the same boilerplate objections, claiming the information was privileged, "premature," and "constitute[d] and attempt to invade counsel's work product."  Plaintiff failed to provide any substantive response whatsoever to any of these requests, despite the fact that even her expert disclosure deadline has now passed.

Interrogatory No. 20:  Plaintiff failed to provide any response to this interrogatory at all, instead promising some unspecified supplement some day in the future.  To date, Plaintiff still has not supplemented her response to this request and frankly has declined to do so.

Interrogatory No. 21:  Plaintiff repeated her boilerplate objections about being "premature" and "call[ing] for a narrative response" to this Interrogatory, which requested that she state why and how she contends the subject accident occurred, and identify each person or document to support that contention.  Though Plaintiff's expert disclosure deadline passed on November 20, 2017, to date, Plaintiff has never provided a substantive response to this request.

Interrogatories 22, 23 and 24: Each of these three discovery requests again asked the Plaintiff to provide the factual basis for her various claims in this case.  As with her prior "responses," Plaintiff copied and pasted the same generic, boilerplate objections and unsupported claims of privilege without ever providing any substantive response.

## IV.   Ex.2 – Plaintiff's Individual Responses to UPS's First Set of Requests for Production

As with her individual responses to UPS's First Set of Interrogatories, Plaintiff continued her pattern of improper, boilerplate objections without explanation and lack of substantive responses in her "answers" to Defendant's First Set of Requests for Production. Defendant notes the following deficient responses:

8

Request No. 1:  Plaintiff claimed this request, asking for a copy of all documents concerning her alleged "past, present, and future loss" of the "care" and "maintenance" of the Decedent as referenced in her Complaint was "overbroad, global, vague and harassing," requested documents protected "through either the attorney-client and/or work-product privileges or consulting expert privilege, and seek information and documents prepared in anticipation of litigation and/or for trial."  Plaintiff, however, promised to "supplement" her non-response at some later, unspecified date "if and when such documents become available."  To date, no substantive response has been provided, despite the fact that Plaintiff's expert disclosure deadline has now passed.

Request Nos. 3 and 4:  This request asked for copies of all documents which Plaintiff intended to rely upon for her claim concerning the alleged "loss of wage earning capacity of Andriana Hall" and "loss of the pecuniary value of the life of Andriana Hall."  Plaintiff copied and pasted her standard, improper and unsupported objections, and failed to provide any substantive response whatsoever.

Request Nos. 5, 6 and 7:  This request asked for a copy of all documents which Plaintiff intended to rely upon for her various claims as a result of the subject accident.  Again, Plaintiff copied and pasted her same improper objections and failed to provide any substantive response.

Request Nos. 8, 9, and 13: These requests sought the documents which Plaintiff intended to rely upon concerning her own claims of individual damages in this case.  Plaintiff failed to provide any substantive response, instead promising to supplement "if/when material becomes available."  To date, Plaintiff has provided no such supplementation and frankly has declined to do so.

<u>Request Nos. 11, 12, 16, and 24</u>: Each of these requests sought information and documents reasonably calculated to lead to the discovery of admissible evidence concerning Plaintiff's proposed "experts" in this matter. Plaintiff used her standard, boilerplate objections, and failed to respond. However, even though her expert designation deadline has now passed, Plaintiff still has not supplemented her responses to these requests.

<u>Request Nos. 19 and 20</u>: These requests, seeking information concerning the Plaintiff and Decedent's phone records and communications in the hours leading up to the subject accident, are directly relevant to the parties' respective contentions concerning the cause of the subject accident. Plaintiff recognized this herself, and obtained possession of the Decedent's phone and phone account shortly after the accident. Plaintiff has now testified that she intentionally spoilated much of the information sought by these Requests, despite Defendant's prior preservation letter, but at least a portion of the documents still exist.[1] However, to date, Plaintiff has never provided the requested documents, and "answered" only that she would supplement her response "if/when this information becomes available."

<u>Request Nos. 21, 22, 27, 28, 29, 31, 42, 43, 44, 46, 47, 48, and 49</u>: Plaintiff failed to respond substantively to any of these requests, claiming only that she would supplement at some unspecified date and time in the future. Again, however, no supplements have ever been provided, despite the late stage of the case.

**V.     Ex. 3 – Plaintiff's Responses on Behalf of the Estate and Wrongful Death Beneficiaries to UPS's First Set of Interrogatories**

Plaintiff's "answers" on behalf of the purported Estate and Wrongful Death Beneficiaries of the Decedent, Andriana Hall (hereinafter referred to as "the Estate" for clarity), to Defendant UPS's First Set of Interrogatories followed the same pattern as her prior discovery "responses":

---

[1] This information and documents is the subject of Defendant's Spoliation Motion and Request for Sanctions, filed contemporaneously herewith and incorporated herein by reference.

Interrogatory No. 2: Plaintiff, answering on behalf of the Estate, declined to itemize and support its claims of damages in this case, copying and pasting the same boilerplate objections Plaintiff used in her individual discovery response to the same question. To date, no substantive response to this request has ever been provided.

Interrogatory No. 3: This request asked that all purported beneficiaries of the Estate be identified, along with his/her contact information, relationship to Andriana Hall, and the date of their last visit or communication with the Decedent prior to the accident. To date, and according to Plaintiff's sworn testimony, only the Plaintiff herself has ever been identified. However, Plaintiff's counsel claims to represent multiple other individuals, none of whom have ever been properly identified or disclosed pursuant to either this request or Rule 26, who are purportedly "beneficiaries" with an interest in this action.

Interrogatory No. 14: This request sought an itemization of the monthly living expenses of the Decedent prior to the subject accident, in connection with Plaintiff's damages claims in this case. To date, Plaintiff has never provided a substantive response to this request.

Interrogatory No. 16: This interrogatory sought the factual basis for Plaintiff's claim, if any, of conscious pain and suffering on the part of the Decedent following the subject accident. To date, Plaintiff has never provided a substantive response to this request.

Interrogatory No. 20: This interrogatory asked that the Plaintiff identify each social media app or website on which the Decedent or any alleged beneficiary posted content to for the one (1) month period immediately prior to the subject accident. The information sought by this request is within the actual and/or constructive possession, custody and control of the Plaintiff/Estate, and reasonably calculated to lead to the discovery of admissible evidence concerning not only the Decedent's whereabouts and activities leading up to the accident, but

also the allegations of loss of consortium, etc. raised by both the Plaintiff, individually, and on the part of the purported "beneficiaries" of the Decedent. Although Plaintiff claimed she was "not presently aware of such accounts" but would "supplement" here response later, during her deposition, Plaintiff was aware of multiple accounts held by the Decedent, and admitted she made no attempts to contact the other "beneficiaries" to obtain the information sought by this request.

Interrogatory No. 21: As discussed in greater detail herein, many of Plaintiff's responses can be described, at best, as sorely misleading. This interrogatory, which asks Plaintiff to identify each person having any ownership interest whatsoever in the Decedent's vehicle, is one such example. Plaintiff's response was "none," which is clearly wrong. As Defendant has uncovered later on, the car was purchased from East Main Motors, and as Defendant now knows, was not paid for at the time of the accident. Defendant learned during the Plaintiff's deposition that the vehicle was financed, but not the entity it was financed through, and further learned that Plaintiff herself was paying the payments on the vehicle. Given that Plaintiff provided a sworn verification claiming that her responses were true, correct and complete at the time they were made, and this response obviously is none of those things, it begs the question of what other discoverable information and documents have been improperly withheld.

Interrogatory Nos. 22 and 23: These requests, seeking information concerning the Decedent's phone records and the identity of those she communicated with in the hours leading up to the subject accident, are directly relevant to the parties' respective contentions concerning the cause of the subject accident. Plaintiff recognized this herself, and obtained possession of the Decedent's phone and phone account shortly after the accident. Plaintiff has now testified that she intentionally spoliated much of the information sought by these Requests, despite

Defendant's prior preservation letter, but at least a portion of the requested information and associated documents still exist. However, to date, Plaintiff has never provided the requested information, despite the fact that, as Defendant learned in Plaintiff's recent deposition, Plaintiff has "assumed" control and ownership of the Decedent's phone and actual cell phone account (which she has continuously maintained and paid for under the Decedent's name since the date of the accident).

## VI.     Ex. 4 – Plaintiff's Responses on Behalf of the Estate and Wrongful Death Beneficiaries to UPS's First Set of Requests for Production

While much of these discovery requests and Plaintiff's "responses" follow the same pattern as those set forth above, UPS notes the following additional deficiencies:

Request No. 2:   Because of the improper boilerplate objections to this request and Plaintiff's failure to properly identify the responsive documents actually being referenced, Defendant has no way of determining whether or not all responsive documents have been produced.  Defendant requested that the Plaintiff clarify her response, but Plaintiff has declined to do so.

Requests Nos. 3 and 4: Both these requests are straightforward and seek information relevant to Plaintiff and the Estate's allegations of loss in this matter.  However, because of the improper qualifications on Plaintiff's responses, Defendant has no way of determining whether the responsive information/documents were actually provided. Defendant requested that the Plaintiff clarify her response, but Plaintiff has declined to do so.

Request Nos. 5 and 6:  Plaintiff claims that Facebook unilaterally "closed" Decedent's account.  That is not how the process works.  Facebook has to be told that a person has passed away, and must be contacted by a verified immediate family member to create a memorialized account or otherwise remove the account from Facebook.  According to Facebook's own stated

policies posted on the website, it takes a period of up to 90 days to actually delete an account. In any event, Plaintiff was subject to a formal preservation request covering such information since May 11, 2016, and knew or should have known of the relevancy of these requested documents. Notably, Plaintiff has admitted she made no efforts to obtain the documents from the Decedent's *other* social media accounts, such as Twitter, in response to these requests.

Request Nos. 8 and 9: As discussed in greater detail herein, Plaintiff has admitted that shortly following the subject accident, and almost immediately following her receipt of the Decedent's phone from the Olive Branch Police Department, she believed it was important to find out what had happened during the subject accident and who the Decedent had been talking to prior to the accident. Plaintiff has further provided sworn statements and testimony under oath that she knowingly and willfully proceeded to spoilate much of the information/materials sought by these Requests, despite knowing full well both their import to this litigation and despite Defendant's formal preservation request for such information/materials. Nevertheless, according to the Plaintiff, certain materials covered by these Requests still exist, but have never been produced.

Request Nos. 10, 11, and 12: Plaintiff largely copied and pasted her standard set of boilerplate objections and made the same set of unsupported claims of privilege to each of these requests, which simply seek those various documents Plaintiff intends to rely upon in this case. At best, Plaintiff implies she and the Estate are entitled to "hold back" relevant documents and materials responsive to each of these requests until the time when "Plaintiff will furnish Plaintiff (sic) experts for depositions, where Plaintiff expects that any documents responsive... will be produced." Plaintiff's expert disclosure deadline has now come and gone without any supplementation to any of these requests, and apparently believes that despite her clear discovery

14

obligations under the Rules, she can not only engage in document dumping at the time of her proposed "experts'" depositions, but despite the Court's latest instructions to the Court, has declined to even produce her experts for deposition until after the New Year. Such conduct violates both the spirit and letter of the Rules.

Request Nos. 13, 14, 15, 16, 18, 19, 20, 22, 23, 24, 25, 26, 28, and 29: As with the preceding three Requests for Production, each of these requests again seeks information concerning the Plaintiff's alleged damages and those documents Plaintiff intends to rely upon in this case. With these, Plaintiff takes the position that because the documents are not in her *immediate* physical possession, she has no obligation to obtain them, even if it is undisputed that responsive materials would be within her actual or constructive possession, custody and/or control. She further reiterates her stance that that she and the Estate are somehow allowed to withhold responsive materials and supplement at some unspecified point in the future, when Plaintiff agrees to produce her proposed "experts" for deposition. As is Plaintiff's pattern, however, to date, no supplement to any of these Requests has been received.

Request Nos. 30, 31, and 32: Rather than provide any substantive response to these three Requests, Plaintiff simply promised to supplement "if/when the information becomes available." In each instance, the requested information either exists, or it does not, and in any event, Plaintiff had an explicit duty to undertake a reasonable investigation and produce those responsive materials that were within her actual or constructive possession, custody and/or control within the time frame set by the Rules, not simply evade, delay, and produce only those documents *she* wants to produce, *whenever* she decides to get around to producing them. Nevertheless, following Plaintiff's recent deposition, it is now clear that at least *some* of the information and documents responsive to these requests actually *do* exist, *are/were* within Plaintiff's *actual*

possession, custody and control, and despite this, have still never been produced.

Requests Nos. 33 and 34: The documents sought by both these requests would be within the Plaintiff's actual or constructive possession, custody and/or control, and either exist (and should therefore have already been produced) or do not exist (in which case Plaintiff should have simply responded that was the case rather than attempting to evade her discovery obligations by qualifying her response and promising to supplement at some unspecified later date). Based upon her deposition testimony, Plaintiff has undertaken little if any effort whatsoever to gather any documents or information other than the little she *wanted* to produce in this case.

Requests Nos. 35 and 37: As stated previously, Plaintiff's expert disclosure deadline has already passed, without any supplement to either of these Requests, and to date, Plaintiff has never complied with her obligations in supporting any claim of purported privilege by producing a privilege log in this case.

Requests Nos. 40 and 41: The documents sought by these Requests are directly relevant to Plaintiff's claims concerning alleged damages in this case, most notably the Decedent, Andriana Hall's purported loss of earning capacity and loss of the pecuniary value of her life. As noted herein, Plaintiff's expert disclosure deadline has now passed, and Plaintiff produced an "expert" who proposes to opine on these issues. This means one of two things must be true – either Plaintiff's proposed "expert" has been provided documents and information by the Plaintiff which has been deliberately and intentionally withheld from production in this case, in which event *both* the discovery at issue and Plaintiff's proposed "expert," relying on such materials, should be excluded in their entirety pursuant to Rule 37 of the Federal Rules of Civil Procedure, or two, Plaintiff's "expert" has no factual basis for his proposed opinions in this matter, in which case both the expert and his proposed opinions should be excluded under

16

*Daubert*.

Request No. 42:  Plaintiff does not even try to respond to this Request in any meaningful way, instead copying and pasting her standard set of boilerplate objections which do not even meet the substance of the Request as written.  This Request asks very simply for a copy of any communication and/or statement which the Plaintiff has from any former or current agent, employee, or servant of the Defendant.  Such information is properly discoverable under Rule 26, and yet Plaintiff, for purposes of delay and evasion, objects on the ground that the request "is overboard, global, vague and harassing, and because it does not specify the items to be produced with particularity."  *But see* Fed. R. Civ. P. 26(b)(3) (allowing for discovery of a party's own previous statement and noting that if the party's request is refused, sanctions are appropriate pursuant to Rule 37(a)(5).  Plaintiff takes the impropriety of this response a step further, claiming that such documents are "privileged against disclosure through either the attorney-client and/or work-product privileges or consulting expert privilege, and seek (sic) information and documents prepared in anticipation of litigation or for trial" and even that the Request somehow requires "Plaintiff to unilaterally identify expert witnesses and their reports and documents/materials at the start of discovery."  Defendant pointed out the absurdity of Plaintiff's objections, assuming initially that the response was clearly a typographical mistake.  Plaintiff, however, has refused to amend or otherwise supplement her answer, claiming she "stands by" her response to this Request.

Request No. 43:  Plaintiff never responded to this Request, which seeks documents relevant to the Decedent's physical and mental health prior to the subject accident and which is directly relevant to Plaintiff's damages claims in this case.  Plaintiff only promised to "supplement" her response at some unspecified date in the future.  However, no supplement has

ever been received.

Request No. 44:  Plaintiff claims not to "have" documents responsive to this request, but during her deposition, Plaintiff testified under oath that she made no attempt to obtain those documents either.  Plaintiff may not permissibly evade or avoid her discovery obligations to undertake a reasonable investigation and produce those responsive materials which are reasonably within hers and the other alleged "beneficiaries," if any, actual possession, custody and control simply because she chooses not to look or ask for them. Plaintiff acknowledged during her deposition that she herself made postings concerning the Decedent on at least one social networking application, Facebook, which would be responsive to this Request, and never produced those either. Plaintiff should not be permitted to "pick and choose" what discovery she is willing to provide.

Request No. 46:  Plaintiff has failed to ever respond substantively to this Request, which seeks documents related to the Decedent's purported injuries and alleged cause of death as a result of the subject accident, instead relying upon grossly improper objections, such as that the Request is "obviously overbroad on its face and because it does not specify the items to be produced with particularity."  Plaintiff never supported her claims that the documents sought by the Request are somehow "privileged" through the production of the requisite privilege log, and her assertions that it required the premature disclosure of Plaintiff's expert opinions are certainly moot at this point, and yet to date, no supplemental response has ever been provided.

Request No. 52:  Plaintiff, as next of kin and representative of the Estate of Andriana Hall, has within her possession, custody and control the documents sought by this Request. Contrary to her response that she "has no material responsive to this Request," Plaintiff testified under oath during her recent deposition that there were at least two (2) traffic tickets *in her*

*actual possession* for Andriana Hall following the subject accident, when she went to the Olive Branch Police Department to retrieve Andriana's cell phone, purse, and other belongings. These documents still have never been produced. Whether Plaintiff spoliated these documents or simply chose to provide a false response to this Request, there can be little argument that the withholding of these discoverable documents is and was intentional and knowing following Defendant's attempts to resolve this deficiency with the Plaintiff and her own deposition. In either case, such conduct is appropriately sanctionable under Rules 26 and 37.

Request Nos. 53 and 54: Plaintiff admitted during her deposition that she has taken no steps to try to obtain the documents sought by these Requests. She also admitted that she was personally responsible for servicing the Hall vehicle on several occasions, meaning that most, if not all, of the documents sought by these Requests were, at least at one time, within her actual and constructive possession, custody and control. Instead of responding fully and fairly to the discovery requests as written, however, Plaintiff chose once again to evade her discovery obligations under the Rules and promised to "supplement if/when this information becomes available." As with her prior discovery responses, however, to date no supplementation has been made, and none appears forthcoming.

Requests Nos. 55, 56, 57, and 58: Each of these requests seek documents relevant to Plaintiff's damages claims in this case, most notably to Plaintiff's allegations concerning the loss of earning capacity and loss of the pecuniary value of Andriana Hall's life following the subject accident. As noted above, Plaintiff's expert disclosure deadline has now passed, and no supplementation has been provided to Plaintiff's (lack of) response to these requests.

Request No. 60: Plaintiff repeated her standard, improper set of objections to this Request, which simply asked for a copy of those documents, if any, which Plaintiff intends to

19

rely upon to support her allegations of conscious pain and suffering on behalf of Andriana Hall during or after the subject accident. Plaintiff has never provided any substantive response to this Request.

Request No. 65: Defendant incorporates by reference its Motion for Sanctions against the Plaintiff for the willful, knowing, and intentional destruction of much of the responsive documents and materials sought by this Request, filed contemporaneously herewith, as if the Motion were set forth fully herein. However, based upon Plaintiff's sworn deposition testimony, at least some of the information relevant to this Request may still exist, and if so, Plaintiff should be immediately compelled to produce the same.

Request Nos. 66, 69, 70, and 77: Plaintiff repeated her pattern of attempting to avoid her discovery obligations by promising to supplement and provide responsive documents to each of these Requests. However, as noted herein, to date, no supplement has ever been provided, Plaintiff admitted under oath she has taken no affirmative steps to try to obtain the requested materials, and has refused to supplement her responses as requested by the Defendant.

## IV.  RELIEF SOUGHT

Defendant seeks an Order from the Court compelling the Plaintiff to immediately supplement her discovery responses to each of the requests set forth herein within not more than five (5) days from the entry of the Court's Order. Defendant's expert disclosures are currently due on or before December 19, 2017, and Defendant needs a reasonable opportunity to review such production with its potential experts prior to their disclosure deadline. In addition, in light of the extent of Plaintiff's failure to cooperate with the Defendant and fulfill her discovery obligations under the Rules in good faith, Defendant contends that the imposition of further sanctions is warranted in this matter, including but not limited to an award of attorney's fees to

the Defendant related to the filing of this Motion.

### A.     Plaintiff's discovery obligations pursuant to Rule 26(g)

The Federal Rules of Civil Procedure require parties to engage in the good faith exchange of discovery pursuant to Rule 26.  Subsection (g) of that Rule specifically provides that "every disclosure" and "every discovery [ ] response or objection ... must be signed by at least one attorney of record in the attorney's own name – or by the party personally, if unrepresented."  In doing so, the signing party or attorney:

> certifies that to the best of the person's knowledge, information, and belief, *formed after a reasonable inquiry:*
>
> > (A)     with respect to a disclosure, it is complete and correct as of the time it is made; and
> >
> > (B)     with respect to a discovery request, response or objection, it is:
> >
> > > (i)     *consistent with these rules and warranted by existing law* or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> > >
> > > (ii)     *not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation ...*

Fed. R. Civ. P. 26(g) (emphasis added). The Rule goes on to that that "[i]f a certification violates this rule without **substantial** justification, the court, on motion or on its own, **must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may <u>include</u> an order to pay the reasonable expenses, including attorney's fees, caused by the violation**."  Fed. R. Civ. P. 26(g)(3) (emphasis added).

In this case, Plaintiff and her counsel imposed numerous, baseless objections, willfully refused to produce and/or supplement discoverable documents and information requested by the Defendant despite the age of the case and the passing of Plaintiff's expert disclosure deadline,

and have generally refused to engage in any form of good faith concerning the resolution of the multiple deficiencies noted in this Motion. Plaintiff has spoilated evidence, withheld the identification of persons with knowledge, refused to provide the required privilege log to support any of the claims of privilege raised, and provided several answers that, at best, are grossly misleading, which Defendant was only able to discover *after* taking the Plaintiff's deposition. The refusal to rectify *any* of these issues without the need for this Motion can only be interpreted as a flagrant violation of the Plaintiff's discovery obligations under the Rules and an attempt to cause unnecessary delay and increase the Defendant's costs in resolving this matter. There is simply no justification for Plaintiff's conduct in this regard, substantial or otherwise, warranting an imposition of appropriate sanctions under Rule 26.

**B.     Sanctions pursuant to Rule 37(c)**

Many of the discovery requests set forth herein as being in dispute involve the Defendant's request for information and the identification of witnesses Plaintiff intends to rely upon in support of her own claims and defenses in this action, such as, *inter alia,* documents and information pertaining to the following:

- how and why Plaintiff contends the subject accident occurred;

- the identity of the alleged "beneficiaries" of the Decedent, Andriana Hall, their relationship to the Decedent and/or the Plaintiff, and the nature of that relationship;

- the identity of any witness(es) Plaintiff intends to use to support her claims in this case, and the basis for such witness(es)' alleged knowledge;

- the amount and nature of the damages sought by the Plaintiff for her loss of support claim(s);

- the amount and basis for Plaintiff's claims concerning the alleged loss of earning capacity

and loss of the pecuniary value of the life of Andriana Hall;

- the alleged cause of death of Andriana Hall;

- the basis for any conscious pain and suffering claim raised by the Plaintiff on behalf of Andriana Hall as a result of the subject accident;

- the basis of Plaintiff's claims for negligent hiring, training, supervision, entrustment, and retention against Defendant UPS;

- the basis of Plaintiff's punitive damages claim against Defendant UPS; and

- the basis, if any, for Plaintiff's defense against Defendant's claims concerning the fault of Andriana Hall for the subject accident.

(*See* Exhs. 1-4, generally.)

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was **substantially justified** or is **harmless**." Fed. R. Civ. P. 37(c)(1) (emphasis added).  Not only that, but such failure can also warrant an order of the payment of the reasonable expenses, including attorney's fees, caused by the failure, an instruction to the jury, and/or "other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)," which include:

 (i)  directing that the matters ... or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

 (ii)  **prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence**;

 (iii)  **striking pleadings in whole or in part**;

 (iv)  **staying further proceedings until the order is obeyed**;

 (v)  **dismissing the action or proceeding in whole or in part**;

(vi)      rendering a default judgment against the disobedient party....

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) (emphasis added).

Plaintiff has had more than a year to complete basic discovery in this matter. Still, basic, discoverable documents and information have never been produced in this case, and Plaintiff seems to suggest that she intends to go on failing to meet her discovery obligations until forced to do otherwise by the Court. Defendant anticipates that in response to the motions being filed contemporaneously with this one, Plaintiff will manage to locate at least some of those documents/information sought in this Motion, and either "supplement" her discovery responses or "produce" the missing documents/information in response to one or more of the Motions filed. Respectfully, Rule 37(c) is intended for just this purpose. Plaintiff's failure to produce the basic documents, information, and identification of witnesses to support her own claims and defenses in this case is not harmless, not at this late date, and it certainly is not "substantially justified." Defendant therefore respectfully contends that Plaintiff should be dissuaded from such conduct in the future through the imposition of appropriate sanctions under Rule 37(c).

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, Defendant UPS respectfully requests that the Court GRANT the instant Motion, hold an expedited hearing, and award such sanctions against the Plaintiff as may be merited under Rule 37(a) of the Federal Rules of Civil Procedure. Defendant requests that at the conclusion of such hearing, Plaintiff be compelled to fully respond and supplement her discovery responses, without further objection, within not more than five (5) days from entry of the Court's Order. Defendant further requests all additional relief to which it may be entitled, whether at law or in equity.

Respectfully submitted,

**GLASSMAN, WYATT, TUTTLE & COX, P.C.**

**/s/ Robert A. Cox_____**
**ROBERT A. COX, ESQUIRE (MSB# 104711)**
**RONNA D. KINSELLA, ESQUIRE (MSB# 101884)**
26 N. Second Street
Memphis, Tennessee 38103
(901) 527-4673 – Telephone
(901) 527-0940 – Facsimile
*rcox@gwtclaw.com*
*rkinsella@gwtclaw.com*
*Our File No. 16-204*

Jonathan R. Friedman (*Pro hac vice*)
P. Shane O'Neill (*Pro hac vice*)
WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, GA  30326
404-876-2700(tel)
jfriedman@wwhgd.com
soneill@wwhgd.com
***Attorneys for Defendant UPS Ground Freight, Inc.***

## CERTIFICATE OF CONSULTATION

Pursuant to the Local Rules and Orders of this Court, I hereby certify that I have communicated with counsel for the Plaintiff concerning the issues and relief sought in the present Motion as set out more specifically herein.  To date, the parties have been unable to reach an agreement on the issues presented, necessitating further guidance from this Court.

/s/ Robert A. Cox_____
**ROBERT A. COX, ESQUIRE**

25

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was filed via the Court's CM/ECF system, which will electronically transmit a copy of said pleading to all counsel of record. In addition, a copy of this pleading has been forwarded to counsel below via electronic mail:

Taylor Buntin, Esq. (taylor@bridgforthbuntin.com)
BRIDGFORTH & BUNTIN, PLLC
5293 Getwell Road
Southaven, MS 38672

E. Todd Tracy, Esq. (ttracy@vehiclesafetyfirm.com)
Stewart D. Matthews, Esq. (smatthews@vehiclesafetyfirm.com)
Andrew G. Counts, Esq. (acounts@vehiclesafetyfirm.com)
The Tracy Law Firm
4701 Bengal Street
Dallas, Texas 75235

James B. Summers, Esq. (jsummers@allensummers.com)
James M. Simpson, Esq. (jsimpson@allensummers.com)
ALLEN SUMMERS
80 Monroe Ave, Ste 650
Memphis, TN 38103

**This the 21st day of December, 2017.**

/s/ Robert A. Cox
**ROBERT A. COX, ESQUIRE**