IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LOLITA PENNINGTON, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE AND WRONGFUL DEATH
BENEFICIARIES OF ANDRIANA HALL,

    Plaintiffs,

v.                                      No. 3:16-cv-248-NBB-JMV

SHARANJIT PARMAR,
PARMAR TRUCKLINES,
UPS GROUND FREIGHT INC.
A/K/A UNITED PARCEL SERVICE,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT UPS GROUND FREIGHT, INC.'S *DAUBERT* MOTION TO EXCLUDE PLAINTIFFS' PROPOSED EXPERT DR. RALPH D. SCOTT**

Plaintiffs Lolita Pennington, individually and as representative of the estate and wrongful death beneficiaries of Andriana Hall, file their Memorandum of Law in Support of Plaintiffs' Response to Defendant UPS Ground Freight Inc.'s *Daubert* Motion to Exclude Plaintiffs' Proposed Expert Dr. Ralph D. Scott and state:

### INTRODUCTION

Defendant UPS Ground Freight Inc. ("UPS") has moved to exclude Dr. Ralph D. Scott, Plaintiffs' economic expert, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580 (1993). In its supporting brief, UPS states: "It is UPS's position that Dr. Scott's opinions, premised upon three wholly unsupported assumptions which ignore available and pertinent case facts without any explanation or justification by Dr. Scott, call into question the purported

'methodology' used to reach his opinions in this case." *See* Memorandum of Law in Support of Defendant UPS Ground Freight, Inc.'s Daubert Motion to Exclude Plaintiff's Proposed Expert Dr. Ralph D. Scott ("UPS Memorandum of Law"), at 4. UPS also claims that Dr. Scott has failed to account for the "specific, available facts" regarding Andriana Hall, who was a 20 year old college student with a part time job at the time of her death. Id. UPS, however, conveniently ignores the substantive law of Mississippi on recovery of wrongful death damages that Dr. Scott expressly relied upon in his report. UPS also ignores the accepted methodology for calculating lost earning capacity for minors and young adults that Dr. Scott has used in this case and many other cases, including one in which he was hired by UPS's counsel to render a similar opinion on the lost earning capacity of a minor. The motion to exclude Dr. Scott should be denied.

## FACTUAL BACKGROUND

Plaintiffs filed this lawsuit after a UPS driver, James Capwell, failed to maintain a proper distance from the vehicle in front of him and failed to maintain a proper speed in hazardous conditions, which resulted in his inability to see and stop in time to avoid T-boning the vehicle which the deceased was driving. There is no question this accident consisted of at least two incidents - one, a minor incident in which Ms. Hall's vehicle hydroplaned on a wet road, struck a cable barrier then entered back onto the highway becoming disabled in the left hand lane of a dark highway; two, a second incident occurring some amount of time after the Hall vehicle came to stop in the left hand lane as two semi-trucks also in the left hand lane approached the Hall vehicle. The first semi-truck (a cattle truck) was able to observe the Hall vehicle and swerve out of the way without hitting the Hall vehicle, but the 15 ton (+) pound UPS truck (a double trailer) following the cattle truck did not timely observe the Hall vehicle and slammed into the right side of the Hall vehicle. Ms. Hall was pronounced dead at the scene.

**ARGUMENT**

**UPS's Motion to Exclude Dr. Scott Should be Denied Because His Methodology Is Reliable and Generally Accepted, His Data is Relevant and His Opinions are Specifically Based on Mississippi Law on Wrongful Death Economic Damages.**

In *Greyhound Lines, Inc. v. Sutton*, 765 So.2d 1269, 1277 (Miss. 2000), the Mississippi Supreme Court held:

> [W]e hold that in cases brought for the wrongful death of a child where there is no past income upon which to base a calculation of projected future income, there is a rebuttable presumption that the deceased child's income would have been the equivalent of the national average as set forth by the United States Department of Labor.

In the present case, UPS wrongly complains that Dr. Scott made a series of assumptions "with no factual support or basis referenced" about lost earning capacity for Ms. Hall's expected income flows under three scenarios: (1) average earnings of female with some college; (2) average earnings of female college graduates; and (3) average earnings across all occupations in the United States based on U.S. Department of Labor statistics. See UPS Memorandum of Law, at 4 and Ex. 1 thereto at p. 1 (Scott's expert report). In fact, Dr. Scott unequivocally identifies in his expert report the method he used to calculate Ms. Hall's lost earning capacity and the data it is based upon:

> The present value of future income for these scenarios is calculated by projecting base income over work life expectancy in accordance with the equation below:
>
> $$\text{Value of Future Income} = \sum_{t=1}^{T} (\text{Base Income})(1-\text{Personal Consumption Percentage})/(1 \div r)^t$$
>
> where T = work life expectancy, which is alternatively assumed to be 32.56 or 44.00 additional years at age 23 for Scenario (1); 33.99 or 43.00 additional years at age 24 for Scenario (2); or 32.56 or 44.00 additional years at age 23 for Scenario (3). The lower end of these ranges is based on statistical work life expectancies based on Gary R. Skoog, James E. Ciecka, and Kurt V. Krueger: "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors", *Journal of Forensic Economics*, 22 (2), 2011, attached as Exhibit (1). The upper end of the ranges is based on an assumed retirement at age 67.

3

> Base Income (Scenario 1) = $0.00 for year 1 (age 22); $24,046.00 per year for years 2-3 (ages 23-24); $35,969.00 per year for years 4-13 (ages 25-34); $44,077.00 per year for years 14-23 (ages 35-44); $48,201.00 per year for years 24-33 (ages 45-54); $52,944.00 per year for years 34-43 (ages 55-64); and $53,272.00 per year thereafter, based on the United States Census Bureau publication: *Current Population Survey, 2016 Annual Social and Economic Supplement*, table PINC-04, attached as Exhibit (2).
>
> Base Income (Scenario 2) = $0.00 for years 1-2 (ages 22-23); $36,482.00 per year for year 3 (age 24): $53,081.00 per year for years 4-13 (ages 25-34); $68,348.00 per year for years 14-23 (ages 35-44); $70,957.00 per year for years 24-33 (ages 45-54); $73,971.00 per year for years 34-43 (ages 55-64); and $60,901.00 per year thereafter, based on the United States Census Bureau publication: *Current Population Survey, 2016 Annual Social and Economic Supplement*, table PING- 04, attached as Exhibit (2).
>
> Base income (Scenario 3) = $0.00 for year 1 (age 22) and $49,630.00 per year thereafter, based on the above-cited United States Bureau of labor Statistics publication, attached as Exhibit (3).

See Exhibit A (Scott's expert report) to Affidavit of Ralph D. Scott, Jr. (Exhibit 1 hereto), at p. 2 thereto. (It is also attached as Exhibit 1 to UPS Memorandum of Law.)

As Dr. Scott explains more fully in his affidavit, he based his calculation of Ms. Hall's lost earning capacity upon the average earnings of similarly situated individuals at similar levels of educational attainment because at the time of her death, she was a 20 year old college student with a very limited earnings history from a part time job. In the field of forensic economics, it is a generally accepted methodology to use statistical data addressing the average earnings of similarly situated individuals at similar levels of educational attainment as the basis for lost earning capacity of a minor or young adult whose employment history is not indicative of their earning capacity based on past or continuing educational attainment. Affidavit of Ralph D. Scott, Jr. (Exhibit 1 hereto), at ¶¶ 4-5.

UPS further complains without merit that Dr. Scott used a consumption rate of 30% despite allegedly "[h]aving no actual facts, documents, or data on which to rely" on which to base his opinion. See UPS Memorandum of Law, at 4. As specifically stated in his report, Dr.

Scott used a 30% consumption rate in his calculations based upon the *Greyhound Lines* case, which stated:

> [W]e hold that the consumption rate is another factor which may be argued by the parties to the finder of fact in support of increasing or decreasing the presumption that the deceased child's income would have been equivalent to the national average. The credibility and weight of such testimony as are to be determined solely by the finder of fact. As the Court of Appeals observed in the present case, [plaintiff's expert] Channell based his testimony and calculations on the average earnings of a high school graduate and a personal maintenance allowance of 30% based on a study by economist Earl Cheit.

*Greyhound Lines*, 765 So.2d at 1279. Dr. Scott's report similarly states:

> Personal Consumption Maintenance Percentage = 30.0% based on the guideline established in Greyhound v. Sutton, cited above. This percentage is approximately equal to the average consumption percentage of single females, married females, and married females with two children across the scenarios identified above.

See Exhibit A (Scott's expert report) to Affidavit of Ralph D. Scott, Jr. (Exhibit 1 hereto), at p. 2 thereto.

Finally, it is difficult to dispute that many attorneys and courts have relied upon the expert opinions of Dr. Scott for his calculations of economic damages, including lost earning capacity for minors and young adults. He has testified throughout the Mid-South in hundreds of cases as evidenced by the list of cases attached as Exhibit 5 to his expert report in this matter. See Exhibit A (Scott's expert report) to Affidavit of Ralph D. Scott, Jr. (Exhibit 1 hereto), at Exhibit 5 thereto.

In fact, Dr. Scott was retained as an expert witness in a recent case by the law firm of Glassman, Wyatt, Tuttle & Cox, P.C., which represents UPS Ground Freight, Inc. in this matter. The methodology that Dr. Scott used to compute the lost earning capacity of a minor child in the expert report for the Glassman firm is identical or very similar to the methodology that he used in the present case to calculate the lost earning capacity of Ms. Hall. See Exhibit B to Affidavit

5

of Ralph D. Scott, Jr. (Exhibit 1 hereto).

## CONCLUSION

Plaintiffs respectfully request that the Court deny UPS's *Daubert* motion to exclude Dr. Scott. Dr. Scott's methodology is reliable and generally accepted, the data he used is relevant, and his opinions are based on the substantive law of Mississippi on wrongful death economic damages.

Respectfully submitted,

**THE TRACY LAW FIRM**

s/ Stewart D. Matthews
Stewart D. Matthews
*Pro Hac Vice*
E. Todd Tracy
*Pro Hac Vice*
Andrew G. Counts
*Pro Hac Vice*
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000
smatthews@vehiclesafetyfirm.com

**BRIDGFORTH & BUNTIN, PLLC**

s/ Taylor Buntin
Taylor Buntin (MSB #7525)
5293 Getwell Road
Southaven, MS 38672
(662) 393-4450
taylor@bridgforthbuntin.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2018, I caused to be electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Mississippi, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                                   s/ Stewart D. Matthews
                                                   Stewart D. Matthews