IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

_____

| | |
|---|---|
| LOLITA PENNINGTON, INDIVIDUALLY ) <br> AND AS REPRESENTATIVE OF THE ) <br> ESTATE AND WRONGFUL DEATH ) <br> BENEFICIARIES OF ANDRIANA HALL, ) <br>  ) <br> *Plaintiffs*, ) <br>  ) <br> vs. ) <br>  ) <br> SHARANJIT PARMAR, ) <br> PARMAR TRUCKLINES, ) <br> UPS GROUND FREIGHT INC. ) <br> a/k/a UNITED PARCEL SERVICE, ) <br>  ) <br> *Defendants.* ) | Civil Action No.:3:16cv248-NBB-JMV <br><br> **JURY DEMANDED** |

_____

**REPLY IN SUPPORT OF DEFENDANT UPS GROUND FREIGHT, INC.'S**
***DAUBERT* MOTION TO EXCLUDE**
**PLAINTIFF'S PROPOSED EXPERT DR. RALPH SCOTT**
_____

Defendant UPS Ground Freight, Inc. ("UPS"), by and through its counsel of record, Glassman, Wyatt, Tuttle & Cox, P.C., respectfully files this Reply in further Support of its Motion to Exclude the proposed expert report, opinions and testimony of Plaintiff's proffered expert, Dr. Ralph Scott, pursuant to Rule 702 of the Federal Rules of Civil Procedure and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Responding to the errors and omissions contained within Plaintiff's Response in Opposition to this *Daubert* Motion, Defendant would reply and show unto the Court as follows:

**LAW AND ARGUMENT**

Plaintiff's Response to the instant Motion centers upon two (2) primary suppositions: (1) that Dr. Scott's reference to a single Mississippi case, namely, *Greyhound Lines, Inc. v. Sutton*,

765 So.2d 1269 (Miss. 2000), along with a few other articles, without laying any factual correlation between those alleged "basis" for his opinions and the facts of this case, are an appropriate substitute for any actual, reliable methodology; and (2) because Defendant's counsel hired Dr. Scott on one prior lawsuit, where Dr. Scott produced a report for a non-working minor child, Dr. Scott's proposed opinions in this vastly different case are therefore presumptively admissible. Plaintiff's argument fails on both counts.

At the outset, Defendant incorporates by reference its Motion to Strike the Affidavits of Dr. Scott and Rodney Ellis, which is filed contemporaneously herewith. As noted in greater detail in that Motion, Plaintiff's attempt to belatedly "supplement" her experts' reports and the purported "basis" for their opinions so long past the deadline and *after* the Court has already warned Plaintiff specifically that such late disclosures would not be permitted, in violation of Rule 26 and the Local Rules of this Court, is plainly improper, and such affidavits should not be considered by this Court.

Plaintiff's first argument, that Dr. Scott's opinions in this matter are *per se* reliable because Dr. Scott purports to rely upon his non-legal interpretation of the law expressed in the case of *Greyhound Lines, Inc. v. Sutton*, in no way addresses the actual issues raised by Defendant in the instant Motion. Defendant pointed out, and Plaintiff notably does not deny, that Dr. Scott's "opinions" in this matter are, to use Dr. Scott's own words, mere "assumptions," not based or otherwise predicated upon *any* actual facts related to *this case* or the Decedent herself. Dr. Scott frankly and honestly admitted during his deposition that he did not consider *any* of the records or information from any of Hall's numerous prior employers, her tax/earnings history, or even her college records. (*See, e.g.,* Exh. 2, submitted previously with the instant Motion.) Even more telling, Dr. Scott failed to explain, either in his Rule 26 report, or in his deposition, or even

2

in his latest, late-filed affidavit, *why* he intentionally excluded relevant, available information concerning Hall's *actual* past earnings and scholastic record, and even Plaintiff's latest attempt to bolster his opinions does not provide any support for the proposition that such remarkable "gaps" in Dr. Scott's evaluation in this case are appropriate and/or accepted.

Indeed, Plaintiff's attempts to quote from the *Sutton* case only further highlight the unreliability of Dr. Scott's opinions in this case. *Sutton* was a wrongful death action arising from a collision between Cheryl May, who was driving a vehicle with her three (3) minor children (all three of which were age 8 or younger) inside, and a Greyhound bus. 765 So.2d at 1271. May and her three children were killed instantly, and the administrators of the children's respective estates filed suit. *Id.* One of the issues raised on appeal in that case dealt with the question of "*what future annual income should be assigned to a child with no work history*" at all. *Id.* at 1276. As Plaintiff correctly states (although erroneously applies) in her Response, the Mississippi Supreme Court held "that in cases brought for the wrongful death **of a *child* where there is *no* past income upon which to base a calculation of projected future income,**" *then and only then* "there is a rebuttable presumption that the deceased child's income would have been the equivalent of the national average as set forth by the United States Department of Labor." *Id.* at 1277 (emphasis added). Such a presumption, and correspondingly Dr. Scott's "methodology" of assuming various "scenarios" from statistics from the Department of Labor does not apply in this case, where Hall indisputably had worked for numerous employers for several years, even taking time off from school to work, *and* Hall was not a child, but a legal adult at the time of the accident.

The Mississippi Supreme Court has previously rejected such "methodology" as Dr. Scott purports to use in this case, further supporting Defendant's request that Dr. Scott and his

3

proposed opinions and testimony be stricken. In 2010, ten (10) years after the *Sutton* case was decided, the Mississippi Supreme Court addressed the same type of arguments as those raised by the Plaintiff in the case of *Rebelwood Apts. RP, LP v. English*, 48 So.3d 483 (Miss. 2010). *English* was another wrongful death case, arising from a premises liability action in which the decedent, Crystal Coleman, was killed by a gunshot wound occurring on the premises of the apartment complex where her father resided with Crystal and Crystal's three minor children. *Id.* at 485. One of the two issues raised on appeal was whether the trial court had erred in allowing the plaintiff's economist to use "the earning-capacity approach" and national average incomes to calculate the loss of Crystal's future earnings as opposed to relying upon her actual earnings. *Id.* at 494. The Mississippi Supreme Court did not find the *Sutton* approach appropriate where the plaintiff's expert "totally ignor[ed] Crystal's actual income before her death", Crystal was 23 at the time of her death (just 3 years older than the Decedent, Hall, in this case, and far older than the oldest child in *Sutton*, who was 8 at the time of his death), and had a prior earnings history. *See, id.* at 495.

It should be noted that the *English* Court also distinguished the case of *Classic Coach, Inc. v. Johnson*, 823 S0.2d 517 (Miss. 2002) in its analysis. In *Johnson*, a 3-3 split decision by the Mississippi Supreme Court with one justice abstaining, one issue presented on appeal was whether the total damages awarded to the plaintiffs were "so grossly excessive as to go against the substantial credible evidence of the trial." *Id.* at 527-28. The decedents in *Johnson* were of college age; one was actively pursuing a major in biochemistry and had worked at a Waffle House for a number of years, the other had recently left college to fix up and sell rental property to finance his education. *Id.* at 528. The *Johnson* opinion notes in part that the defendants objected to plaintiffs' economist "three analyses," in which he approached the potential loss of

4

income based on minimum wage, average wage for a high school graduate and average wage for a college graduate, in order to complete his economic impact study. *Id.* The Court went on to note the factual information in the case the economist used to support these analyses. *Id.* Under the circumstances presented in that case, the Mississippi Supreme Court found that the trial court "did not abuse his discretion, was not manifestly wrong or clearly erroneous, and did not apply an erroneous legal standard" in extending the *Sutton* presumption for use in the case.

However, the facts and arguments presented in *Johnson* are actually further proof of the unreliability and irrelevancy of Dr. Scott's own opinions in this case, and again are easily distinguishable from Plaintiff's arguments here. First, *Johnson* was a split decision, focused on whether a trial court abused its discretion, *not* a *Daubert* analysis. The case only tangentially mentioned the *Sutton* decision as part of an overall analysis of whether the overall amount of damages awarded by the trier of fact was excessive, and the *Johnson* Court was quick to point out "the only testimony offered by the defense" in that case was that the decedents were not yet college graduates and "therefore, the average used should not be that of a college graduate." *Id.* at 529. Notably, while the expert in *Johnson* may have utilized national averages, he did so based upon those populations most closely similar to the facts of the case, namely (1) minimum wage, (2) average wage for a high school graduate, and (3) average wage for a college graduate, <u>and</u> plaintiff's expert in *Johnson* was able to articulate *why* the average wage for a college graduate was the most appropriate approach to determine the decedents' lost future income. Here, Dr. Scott uses significantly different populations than those considered permissible in the *Johnson* case without any support or explanation whatsoever, again demonstrating that his opinions are unreliable and most definitely not in accordance with Mississippi law, rendering them inherently unreliable and therefore inadmissible. Finally, and unlike the expert in *English,* Dr. Scott totally

5

ignores the factual evidence available in this case concerning Hall's scholastic, work, and financial history *and offers no explanation or justification for the failure*. Thus, even if the *Sutton* presumption *might* be applicable in *some* circumstances, neither Dr. Scott nor the Plaintiff has any support for the proposition that it can permissibly or reliably be applied in this case.

As a final matter, Plaintiff's attempt to point out that other lawyers in Defendant's counsel's law firm have sought Dr. Scott's opinions in a prior, totally unrelated lawsuit as "proof" that Dr. Scott's opinions in this case are somehow admissible are likewise unavailing. Setting aside the impropriety of Dr. Scott's publication of that report without his client's approval, the fact that portions of the report are apparently copied and pasted into his current report in this case does little other than support Defendant's contention that his opinions in this case are unreliable and not made upon "good grounds" as required by *Daubert* and Rule 702. Further, Dr. Scott's "opinions" in that matter do not purport to rely upon *Sutton* as that particular case was set in Tennessee, not Mississippi. Finally, and unlike this case, the second matter likewise involved a minor child with no prior work history at all; again, totally different than the facts ignored by Dr. Scott in this case.

## CONCLUSION

Defendant has not challenged Dr. Scott's qualifications in this matter. His resume or past testimony list are not at issue here. As Rule 702 and *Daubert* both make clear – whether an expert is or is not qualified is only one part of a multi-pronged analysis. Defendant has pointed out to this Court and to the Plaintiff that Dr. Scott's proposed opinions: (1) are <u>not</u> based upon sufficient facts or data; (2) are <u>not</u> the product of reliable principles or methods; and (3) do <u>not</u> demonstrate that Dr. Scott has reliably applied such principles and methods to the facts of this case – in fact, as Defendant has demonstrated, Dr. Scott's opinions do not rest on the facts of this

case *at all* and apply the *wrong* "principles and methodology" to this case contrary to Mississippi law. Dr. Scott openly concedes he has ignored the actual facts of this case and despite Plaintiff's attempts to explain Dr. Scott's methodology for him at this late date, the methodology applied is simply wrong. In short, Dr. Scott's opinions are unreliable and are not based upon the requisite "good grounds" and therefore fail to "fit" the facts of this case.

Defendant accordingly requests that this Honorable Court GRANT the instant Motion and exclude Dr. Scott's proposed opinions and testimony in this case in their entirety. Defendant further requests all additional relief to which it may be entitled, whether in law or in equity.

Respectfully submitted, this the 23rd day of February, 2018.

*GLASSMAN, WYATT, TUTTLE & COX, P.C.*

**/s/ Robert A. Cox**_____
**ROBERT A. COX, ESQUIRE (MSB# 104711)**
**RONNA D. KINSELLA, ESQUIRE (MSB# 101884)**
26 N. Second Street
Memphis, Tennessee 38103
(901) 527-4673 – Telephone
(901) 527-0940 – Facsimile
*rcox@gwtclaw.com*
*rkinsella@gwtclaw.com*
*Our File No. 16-204*

Jonathan R. Friedman (*Pro hac vice*)
P. Shane O'Neill (*Pro hac vice*)
WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, GA 30326
404-876-2700(tel)
jfriedman@wwhgd.com
soneill@wwhgd.com
***Attorneys for Defendant UPS Ground Freight, Inc.***

## **CERTIFICATE OF SERVICE**

      I hereby certify that a Notice of Service concerning the foregoing pleading was filed via the Court's CM/ECF system, which will electronically transmit a copy of said pleading to all counsel of record. In addition, a copy of this pleading has been forwarded to counsel below via electronic mail:

    Taylor Buntin, Esq. (taylor@bridgforthbuntin.com*)*
    BRIDGFORTH & BUNTIN, PLLC
    5293 Getwell Road
    Southaven, MS  38672

    E. Todd Tracy, Esq. (ttracy@vehiclesafetyfirm.com)
    Stewart D. Matthews, Esq. (smatthews@vehiclesafetyfirm.com)
    Andrew G. Counts, Esq. (acounts@vehiclesafetyfirm.com)
    The Tracy Law Firm
    4701 Bengal Street
    Dallas, Texas 75235

**On this the 23rd day of February, 2018.**

                                          **/s/ Robert A. Cox**
                                          **ROBERT A. COX, ESQUIRE**